Our next case this morning is Munoz v. Conduent State & Local Solutions, No. 24-2044. Counsel, you may proceed. Good morning, Your Honor. May it please the Court, Fred Rowley, Jr. for the Conduent Appellants. The District Court fundamentally misapplied Renner Center's framework for analyzing arbitration agreements with delegation clauses. That case squarely holds that unless a plaintiff specifically challenges the delegation clause or mounts a genuine issue of formation, the delegation clause must be enforced and the matter left for the arbitrator. Well, Counsel, Counsel, I'm going to jump in right now, because it seems to me that Section 2 of the FAA requires the Court to be satisfied that the parties have consented to arbitration in the first place. Now, isn't that exactly what the appellees asked the District Court to determine, that is, whether appellees and conduit consented to arbitration? No, Your Honor. They didn't ask for that? In opposition to the motion to compel? Because that's exactly what the District Court did. Your Honor, the District Court and the plaintiffs have tried to recast what is really a question of contract interpretation. Well, that's different. I didn't ask if they'd recast it. Sure. I asked if that's what they asked. Did they ask the Court to address whether there was formation of an arbitration agreement? Did they ask the Court to address that? They did, Your Honor. Yes, they did. And just a minute, Counsel. Sure. And did the Court answer the question? The Court answered the question wrongly. No. Counsel, did the Court answer the question? It did. All right. What's wrong with that? Because it's not a genuine question of formation that the plaintiffs have raised here. And we know that from the positions taken in the plaintiffs' briefs on appeal as well as the District Court. And here's why. The plaintiffs don't dispute. But that was the position they took in District Court. And we're reviewing what the District Court did. Correct, Your Honor. Right. If they asked the District Court to do that, the District Court did that. It seems to me your argument has to be that they had no business asking the District Court to do that, right? No, Your Honor. They just misframed the question. Right? So they can ask for all kinds of relief, but the ---- I'm back to Section 2. Sure. There was no one disputed there was an arbitration agreement in Renta Center, correct? That's right, but ---- Okay. The same is true here. No, it isn't. The same is, Your Honor, and here's why. So look at what the plaintiffs actually argue. They are not arguing that there was no contract formed here, that the terms weren't formed. They are not really arguing that the arbitration agreement wasn't formed, and they are not even arguing that the delegation provision wasn't formed. No, they are arguing that there was no agreement formed between your client and them. Your Honor, that argument is really no different from the kind of challenge that was raised in Brayman. It's the same kind of issue. There the plaintiffs argued that the pending litigation exception was applicable, that that exception to an arbitration agreement was applicable, and that the Court could just construe it because they didn't agree to have their disputes arbitrated. And this Court said no. The delegation clause there, there was a broad delegation clause, just like the one here, and the Court applied the delegation clause, notwithstanding the way that the Court framed the question. I do think it's worth looking at. Could I just jump in and ask you a question about this? Sure. So I think I understand that there is this, you've got the overall agreement, the terms and conditions. That's right. What was given to the appellees. Right. And then within that, you have the arbitration, paragraph 20. Right. All right. And if you look at it from the standpoint of, well, there's an arbitration agreement because it's embedded. That's right. Overall terms and conditions. That's one way of looking at it. I mean, another way of looking at it is, well, wait a minute. You have Wells Fargo, and you have the appellees. You have the appellees, and you have conduit. And you've got this arbitration clause that doesn't mention conduit. All right. Why is it that a court can't look at that and say, is there consent to arbitration between conduit and the appellees? Here's why. And what I'd like to know is, have you got a case, because I've been looking for one, that matches up with that scenario? Your Honor, I do think Brayman says a lot about the question that you just framed. Think of it this way. And I think noting that the arbitration agreement here is nested within this broader agreement is important, and here's why. There's no dispute but that all three parties agreed to the terms as a whole. We know that because the plaintiffs have asked the court to enforce language in the terms and conditions as a whole against conduit. So there's no question of mutual assent to the terms as a whole. What the plaintiffs are arguing about is language within the terms and conditions. Language in the preamble. So what do the plaintiffs want? And how are they characterizing this dispute as one of formation? Well, they're saying despite the fact that all three parties mutually agreed to the terms and conditions, there's actually a bilateral contract that's embedded within the terms and conditions, and there's really only two parties that agreed to the arbitration but, Your Honor, this is important. There's no language in this agreement that carves out conduit as a party to the arbitration agreement, and this is important because under black letter law. What do you mean by carves out? You mean does it need to be explicit? It would. It would, and here's why. Again, because hey, I'm trying not to interrupt you, so please don't interrupt me. Yes, Your Honor. All right. Does the language need to say expressly that conduit is carved out, that this provision in the arbitration, that the arbitration provision doesn't apply to conduit? Does there need to be language to that effect? Yes. Here's why. Because, again, there's no dispute that there's mutual assent to the terms as a whole among all three parties. Plaintiffs don't dispute that. They're focusing on the arbitration agreement and basically saying conduit is ousted. But we know as a matter of black letter law, and I'll just quote South Dakota law here, one who accepts a written contract is conclusively presumed to know its contents and to assent to them. So we know that by mutually assenting to the terms as a whole, there's a presumption that the parties agreed to all the terms within that contract. So they have to have some kind of evidence, some textual basis to say actually as to the arbitration agreement, conduit is ousted and we're carving up the rights as between conduit and Wells Fargo. There's no language like that. And there is an illustration in Brayman of what that language would look like. In contrasting the pending litigation clause in Brayman, this Court said, well, look at the next sentence after the delegation clause in the agreement there. And I'll quote the language. However, the preceding sentence, that was the delegation clause, shall not apply to the class action waiver described below. There was an express carve-out from the delegation clause. And this Court said that language, quote, is everything a carve-out should be. There's no language like that here. Can I? Do you mind if I follow up? I think you'd better. I just want to follow up on this argument about a textual basis. And I want to understand your argument.  So in paragraph 20, do you agree or disagree with the proposition that the arbitration agreement applies only to a dispute? Oh, the plain language of the agreement says a dispute includes. No. Sure. I'm not talking in B yet. I'm in A, binding arbitration. Sure. The dispute will be resolved by the arbitration process. I know what you're anticipating. Sure. But I want to take it in baby steps. Sure. The binding arbitration applies only if there is the dispute. That's right. And in B, there's three relevant clauses. Right. The definition clause and two inclusive clauses. That's right. You were wanting to jump to the second inclusive clause. The definition clause is a dispute is any unresolved disagreement between you, the customer, and bank. Right.  Okay. And then there's the second, the next sentence, and then the last sentence refers to what a dispute between you and the bank includes. Correct? Right. And so if you have a definition, it's sort of like a pronoun with an antecedent. Don't you just substitute what the antecedent is, an anaphora, for example?  So the second sentence, for example, would be it, a dispute, comma, which is any unresolved disagreement between you and the bank, includes any dispute relating in any way to the Carter right? Right. That's how it should be interpreted. Right. And the same for the last sentence. But, Judge, am I correct? That language, the way that the plaintiffs are trying to construe it, to use the reference of Wells Fargo also to mean bank, that's the language in the preamble that they're trying to use. It's not express enough, and it's not an express carve-out. It's not a sentence in the delegation clause, but it's more than that. Consider the way that the plaintiffs are using that language. They think that bank refers to conduit with respect to every other part of this agreement. Right. They think that, yes, Your Honor, they think that conduit steps in for Wells Fargo. And so they are treating the word bank as though it refers to conduit for every other part of this agreement except the arbitration provision. There's no carve-out the way that there was in Brayman. I'm not talking about your adversary. I'm just talking about how I would read this contract. Sure. And so what's wrong with the way I'm, you know, when I read a pronoun, and I mentally substitute the antecedent. So when I get to the word dispute, what it includes, I substitute the antecedent. Your Honor, here's why. First, that's a, look, it's a merits issue, right? That is the I don't know that it's a merits issue, because I think we're talking about whether or not this clearly and unmistakably delegates arbitrability to the arbitrate. So And you started with Renner Center, where you have an express stand-alone delegation clause. I'm just wondering if this is really a stand-alone delegation clause, because it's only the second including clause. Look, we think that the best reading is that it's a stand-alone delegation clause, but whether you read the word bank or the word Wells Fargo referring to bank, that clause in the way that the plaintiff does doesn't change the analysis and here's why. Because it's still not an express carve-out. And we know that from Brayman. This construction argument that the plaintiffs are advancing is very similar to the one that was advanced in Brayman, where they said, well, this pending litigation exception carves out this dispute. And so it's not subject to the delegation clause. And this Court said, wait a second. Let's look at the language in the delegation clause, and it's not express. It's particularly important that the Court apply that analysis in a disciplined way here, because, for a couple of reasons. One, again, this is a situation where there's no dispute that the parties mutually ascended to the terms as a whole. So what you have to conclude is actually as to this part of the contract, one party is ousted and the rights are carved up, and so you would need some express language to show that. And we submit it's not present here. Think of it this way. Two other points. One, if a party were able to recharacterize a scope issue, and we think this is a scope issue, just what does the arbitration agreement encompass? Does it encompass this dispute or this party? As a formation issue, Renner Center would be dead letter, and the Court would never apply delegation clause, because you could always say, well, wait a second. Here.  We don't have much time left, and we haven't talked at all about equitable estoppel.  Can we go over a couple of things there? Yes, Your Honor. Okay. And I appreciate your argument, and I need to look at Brayman some more. Sure. So I appreciate your pushing that case. But on equitable estoppel, the amended complaint, and this is that first step, the interdependence piece of it, the complaint talks about subcontracting to Conduit. Conduit handles all customer service issues. Conduit is supposed to take care of the situation that arose here.  Doesn't that cut against interdependence? It kind of pushes everything over on Conduit. Your Honor, I want to pause for a second because I was just going to say that before you even get to the merits of the equitable estoppel argument, the fact that we have asserted equitable estoppel as an independent basis to enforce the arbitration agreement, that is also an arbitrable issue that is subject to the delegation clause, and Casa Arena Blanca teaches that. So even if the Court were to construe the delegation clause and the arbitration agreement in a way that plaintiffs suggest, the availability of this equitable estoppel ground as a basis to enforce the arbitration agreement, that also has to go to the arbitrator. Okay. So now.  Okay. Wait a minute. Does that mean you're saying we shouldn't even address the merits? We're saying that that issue, that the delegation clause would apply to our equitable estoppel ground. Well, that's what I mean. Yes. That we shouldn't even be addressing the merits of the equitable estoppel arguments, even though you've laid them all out there. That's right. But if the Court reaches it, now to get to your question, the answer is no. That what the plaintiffs are alleging here is not just parallel misconduct. They're alleging joint misconduct. And we know that from the allegations in the complaint. They allege, for example, that Conduent, and I'm quoting from paragraph 60, opens Epicard accounts in conjunction with Wells Fargo. So this is joint activity. They allege in paragraph 77, Wells Fargo refers any such complaints along with all other customer services issues with the Epicard to Conduent. So there is this joint misconduct. But the more fundamental point, and I think Reeves speaks to this, is you don't need allegations of a conspiracy or that the defendants work together. It is sufficient to say that the claims are inherently inseparable and that they're integrally related. Okay. I understand your argument. What's the standard of review if we evaluate equitable estoppel? If you analyze the district courts ---- Given that it's an equitable issue, don't we usually apply abusive discretion or deference? Yes, Your Honor, although we think that the district court made errors of law, and those would, of course, be reviewed de novo. I was hoping to reserve a couple of ---- You're saying abusive discretion. Yes, Your Honor. Okay. But the errors that ---- I want to be clear about this. I want you to be clear. Yes, the errors that we advance here are legal in nature. And so we think that those would be subject to de novo review. I had intended to tell Your Honor got to equitable estoppel to reserve a couple of minutes. No, you've packed a lot in this morning and in your briefs and appreciate that, but your time is up. Okay. I think we can risk it. I just ---- I don't want to dwell on this, but I just wonder if you may have just talked yourself out of a vote to reverse. What if I hypothetically disagreed with you on the scope of the delegation clause? Right. And I agreed with you on the first theory of equitable estoppel, that it was interconnected and concerted. Now, I think, from based on what you just said, that your view is that is subject to the delegation clause. That has to be decided by the arbitrator. I can only decide things that the district court would have been suited to decide, not the arbitrator. So I'm wondering if we can reverse on the first equitable estoppel theory and probably the second, if we reject your first argument on the scope of the delegation clause. Yes, you could. I mean, so we have two positions. Our top line position, of course, is that the delegation clause applies here and it applies both to this scope question, we think it's a scope question, about whether the arbitration clause includes disputes with conduit, also that it includes or that the delegation clause applies to the equitable estoppel argument. So that's our top line position, but we argue that even if the court reaches those issues, the district court got it wrong on both, got the scope issue wrong because actually the best reading of the contract is that bank includes conduit and also that it got the equitable estoppel analysis wrong. I see. Thank you.  May it please the court, Daniel Schlanger for plaintiffs Apeliz, Anamunoz, and Michael Tilley. Arbitration is a matter of consent. Specifically, as the district court noted, quoting Granite Rock, a court cannot order arbitration of a particular dispute unless it is satisfied that the parties agreed to arbitrate that dispute. In first options, the Supreme Court similarly held, arbitration is a way to resolve those disputes, but only those disputes that the parties have agreed to submit to the arbitrator. In this case, there is no evidence of mutual assent between plaintiffs and you can see that by looking at the language of the arbitration clause itself. Well, counsel, I'm really going to flip the question that I asked to opposing counsel and that is if we have conduit being a party to the terms and conditions, which I think you've said conduit is a party to the terms and conditions. Of the overall agreement. Yes, yes, and you have an arbitration clause within the terms and conditions, then isn't that the right way to look at it, as counsel was arguing? That is, at that point, the question kicks over to the delegation clause and from there, the question of whether your claims against the parties in the case of conduit, the question is whether those claims are arbitrable, right? I mean, why wouldn't we start with the overall agreement and we have the arbitration clause nested in there and I understand your arguments about the language and reverse the bank and so forth and so on, but at that point, didn't your clients agree to the overall agreement? The answer to your question, Your Honor, is that figuring out if a party is consented to arbitration has to be figuring out, particularly in the context of a multi-party contract, which parties agreed. It's who, not what. And so all of those cases that my adversary is citing say, look, A and B agreed to arbitration, but they have problems about what they agreed to arbitrate. All right, but have you got a case where, because now we have C, right? That's right. I mean, we don't just have A and B, we have C and C has agreed to the overall terms and conditions and then the question of whether the arbitration agreement, which it agreed to the overall terms and conditions, whether an issue is arbitrable then, why wouldn't that flow from the delegation clause at that point? And I guess the question I have is, is there a case out there where we have not just A and B, we had A and B in Rent-A-Center, but have we got a case with A, B and C that helps answer this question? How are we going to look at this? I've referred to it leading up to argument, which end of the telescope do you look through here? Do you look at the whole agreement or do you zero in on the arbitration clause? You want to zero in on the arbitration clause and conduit wants to take the whole agreement. Who's right? And is there a case? Counsel cited to Brayman, maybe you want to talk about that. Let me try to address, there's a couple of pieces of what Your Honor has asked me. I'm sorry, there were probably more than a couple, but go ahead. Address them in order. I think that with regard to delegation, conduit is in even worse shape than it is with regard to agreements of arbitration generally because the standard for sending, the standard for enforcing delegation clauses is that there be clear and unmistakable evidence that the parties in the delegation parties delegated that dispute to the arbitrator. And if you look at the Doesn't that presuppose that there's an arbitration agreement in the first place and then the clear and unmistakable test kicks in? We don't think there's either, Your Honor. And did you even make that argument before? We don't think there's, I'm just saying, I don't think there's an arbitration clause, but I think the argument for the idea that conduit and plaintiffs clearly and unmistakably agreed to delegate is even weaker because, and so that would be the first part of my answer. There are a number of sister circuits that have talked specifically about looking at the actual language of an arbitration clause itself to figure out if a third I would refer the court to Newman, for example. Actually, Second Circuit, if we could apologize. In the Second Circuit, in the Republic of Iraq case, the court said that evidence of intent to have an arbitrator determine its jurisdiction with regards to disputes referred by either party does not clearly and unmistakably demonstrate their intent of the arbitrator determine its jurisdiction with respect to any dispute raised by a non-party. Now, I suppose that formulation doesn't exactly get to Your Honor's question, which is, well, in this case, conduit is a party to the overall agreement, but you look to the language of the arbitration clause itself, I think, is really the point. Similarly, in Newman, in the Fifth Circuit, the court said that the first step in determining whether a valid agreement to arbitrate exists, under the first step, excuse me, we look first to the terms of the agreement which dictate who is actually bound by an arbitration agreement. And then if that fails, you go on to estoppel theories. In Tug Hill, which again didn't have this nested problem, and I don't have a case that has the exact nested problem, but again, in Tug Hill, which is the Fourth Circuit, the court said the relevant threshold question that a court must address when being asked to compel arbitration is whether an arbitration agreement exists between the parties, not whether an overall contract agrees, but whether an agreement to arbitrate exists within the parties. And then with regard, I'm jumping ahead a little bit, but with regard to any argument that the arbitrator can then figure that out, Tug Hill said that that fails to address the contractual source of the arbitrator's authority, which, after all, is consent. In this case, it would have to be consent of plaintiffs and conduit. Does that answer Your Honor's question? And with regard to Brayman, you know, Rent-A-Center and Henry Schein and Brayman, in my view, for our purposes, they're all sort of the same thing, which is, once you say, look, these two parties very clearly agreed to arbitrate their disputes, and these two parties very clearly agreed to delegate arbitrability, after that, they're stuck with it, meaning once A and B have agreed, under Rent-A-Center, you can't, you know, any argument you're going to make about enforceability of the contract as a whole goes to the arbitrator. Under Henry Schein, once those two parties have clearly agreed, excuse me, there's no carve-out for exceptionally dumb arguments. Well, how would you respond to the argument, then, that given that you've got your clients, Wells Fargo and Conduit, all saying, we're all on board with the terms and conditions, there is this arbitration paragraph. If you want to take Conduit out of the arbitration picture, doesn't the contract, the terms and conditions, or the arbitration clause itself somewhat have to say Conduit isn't part of the arbitration picture? I think the arbitration agreement would need to make clear that it is only between the plaintiffs and the bank, and it is hard for me to imagine, and not between plaintiffs and all the contract parties. And in this case, the language could not be clear just over and over again, as I won't belabor the point by reading through the whole thing, but, you know, over and over again what it says is you or bank. Let me add a sidebar to this for you to include with your answer, which is this. Why is it that that isn't an argument that should be made to the arbitrator? In other words, you've agreed to the terms and conditions. Maybe on the face of this, it looks like Conduit isn't there, but the delegation clause says, well, that's up to, so you make this argument to the arbitrator, and you may end up being right. You may end up winning and saying, look, this isn't arbitrable, but why wouldn't the arbitrator be the place to go at this point, given the nesting of the arbitration agreement? Because there is no clear and unmistakable evidence that the plaintiffs and Conduit agreed to send that issue to the arbitrator. But isn't that contrary to Brayman and Renner Center? Because in Brayman, is it Brayman or Rayman? Brayman.  You know, what we specifically said was that the issue was going to be delegated to the arbitrator because in relying on, in quoting the language of the delegation clause in Renner Center, that the arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement. And in 20B, our agreement says a dispute includes any, almost exactly the language in Renner Center that we relied on in Brayman about the binding application or enforceability of the arbitration agreement. So if it unmistakably delegated arbitrability in Brayman, why does it here? For two reasons. One is that the word dispute here has been defined by the contract to mean only disputes between you and the bank. And the second reason is that also in that clause, it says that you may not consolidate or join anything else to that dispute between you and the bank. What if it were a third-party beneficiary of the contract? Would the third-party beneficiary be able to apply 20B because they were a beneficiary contractually of contractual rights that were enjoyed by a contracting party, Wells Fargo? You turn to the third-party beneficiary. The question with a third-party beneficiary is, if I haven't consented to the contract, can I be forced to go to the arbitrator anyways? That's how you get there. And so that inquiry as to whether somebody, and that's generally because a court enforces arbitration where the parties agreed or where there's a generally available state law defense, right? Which, you know, estoppel or third-party beneficiary or what have you. So I do not think, absent a delegation clause where the parties explicitly turn that issue as between them over to the arbitrator, if they want to do that, I suppose they could. But absent that, third-party beneficiary is something the court needs to figure out if even though there isn't consent of the parties, it can force the parties into arbitration. Is that a no or a yes? I just wasn't sure. I understood the question. Well, my question, you're saying that come do it is not Wells Fargo, you're relying on the first sentence of 20B. My question, because they weren't a contracting party, they weren't Wells Fargo, they were a subcontractor of Wells Fargo, they inherited the contractual obligations that were thrust on Wells Fargo. And so I'm wondering if they were an obligor inheriting Wells Fargo's obligations and on the flip side, if they were a third-party beneficiary, would they have been able to fit themselves into a dispute between, any unresolved disagreement between you and the third-party beneficiary of the bank? Conduent didn't argue third-party beneficiary status. They argued estoppel. That's why I asked the question. If they had argued third, they're a subcontractor. I don't think they're a third-party beneficiary. That's why I tried to say it was a hypothetical. I've just asked a question. The question is, that would not shoehorn them into the language you or bank, but it could have, given the district court, a state law, common law basis to force arbitration. Anyways, if I just might, on estoppel, add one point, because we didn't really get to it at all. You know, I think, as Judge Matheson pointed out, I think it was your honor, all of the action here really is by conduit. And so in these cases about, you know, joint, mutual, disconcerted action, hand-in-hand, that whole thing, you don't have any of those facts here. It's hard to imagine a case where you have fewer of them. But in addition, I just wanted to correct one thing that's in my adversary's brief a few times, which is the following. The other ground for estoppel under state law is if your claims arise under the agreement. And my adversary has said a couple of times in the briefing that our claims arise under the contract. That isn't correct. The district court addressed this correctly. We're not bringing a contract claim, and all of the obligations here are statutory. And on top of that, even the misrepresentation claims? Yes, Your Honor. And so were there any alleged misrepresentations other than the representations that conduit provided in the contract? That's what I'm trying to get at, Your Honor. The alleged misrepresentations are not in the contract. The alleged misrepresentations are set forth in the denial letters conduit sends when it denies claims, when it states a standard for denying claims that we think is unlawful. And they're not in the contract at all. Counsel, on estoppel, can you help me understand the substantial interdependence argument here? Because throughout the complaint, you label conduit as being the subcontractor to Wells Fargo and to fulfill nearly all aspects of its contract with New Mexico. And as I read sort of the basis of liability that you've alleged, it seems to me most of the actions or inactions are focused at conduit. But what I'm having trouble understanding is how the theories of liability differ between Wells Fargo and conduit and why those are not substantially interdependent. In order to make – Wells Fargo is liable under the EFTA, we think, because it's a financial institution that indirectly offers accounts and therefore it incurs all the obligations. It's chosen to give all those obligations to a subcontractor. Exactly. That's my point. So because they've done that, their liability really springs from the inactions or actions of their subcontractor. So why aren't those two cases dependent upon each other? I think the short answer to Your Honor's question is the standard for – for substantially interdependent and concerted misconduct, which the district court went through the case law in the Estrada case, requires – and the Reeves case as well. All of those cases involve joint action ongoing to commit the violation, right? So a lot of those cases, Reeves included, are cases where you have a staffing agency and a business. And so the business says we're only going to pay a day rate, not an hourly rate. And then the staffing agency is the one who underpays them. And so working together, the two – the allegation is that the two defendants violate the law. Is South Dakota law that clear as to what those terms mean? I mean, I read at least part of the district court's opinion to essentially make an eerie guess as to what it means to be substantially interdependent or concerted misconduct. I mean, Rossi comes up, but are there other cases of South Dakota law that will help us understand what substantial interdependence means? The cases that were cited in the district court that I've looked at are all cases outside of South Dakota interpreting South Dakota law. And they're collected in the district – Estrada is one. There are several of them. They're collected in the district court's opinion. I would just also add that – and the district court covered this as well. Although under South Dakota law, we need to prove collateral estoppel and not just agency, it's clear that under South Dakota law, conduit isn't an agent as a subcontractor. Agency requires under South Dakota law, and this is in the district court's opinion, the understanding of the parties that the principle is to be in control of the undertaking. And conduit never made that argument. And even if it had, it would still need to show the collateral estoppel standard, which it cannot do, we believe. Counsel, it might be helpful for you to respond on one other point about the equitable estoppel, and that was the argument we heard a little earlier that that issue itself is arbitrable. Do you agree with that? I do not, Your Honor. And the reason I don't agree with that is because there is no clear and unmistakable evidence that the parties agreed to that, that conduit and plaintiffs agreed to give that issue to the arbitrator. And so – and I would just point the court to – not only to the Fifth Circuit's decision in Newman, where the court said that, you know, if they can't prove consent to arbitrate, we look to theories – we, the court, look to theories such as equitable estoppel to determine whether a non-signatory may compel arbitration. And so the whole thing swallows itself if you then give that to the arbitrator, because you can only get to the arbitrator once a court has determined that that's where you have to go, because it applies. And the court also – it's a district court case, but there's a discussion of that in Young v. Byte Dance in the Northern District of California as well. Okay. Thank you. Thank you, Your Honors. So we've gone over on both sides quite a bit, so I think we're out of time. Thanks to both of you for the arguments. They were very helpful and well presented, and we appreciate it. And we've got some things to think about, so we'll – May I make one point on equitable estoppel? One? I'll give you 20 seconds. How does that sound? Thank you, Your Honor. All right. I just want to quote from the plaintiff's complaint on this issue of joint misconduct. Because this is what they say at paragraph 101 of the complaint. Defendants did not make – both defendants did not make a good-faith investigation into their dispute. At paragraph 102, defendants did not have a reasonable basis for believing the Epicard transfers were non-error. So, again, the plaintiff is alleging that both defendants did these things. And I would just point to Reeves, because Reeves really rests on two different senses in which the conduct was joint. We'll look at that part of the complaint. Thank you, Your Honor. I appreciate your pointing that out to us. Any other questions? All right. Thanks very much. The case will be submitted, and counsel are excused.